## Mills et al. v. Mills et al.

(Decided Nov. 7, 1935.)

HIRAM H. OWENS for appellants.

J. J. TYE and J. D. TUGGLE for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

By deed dated July 19, 1923, A. Y. Mills and Nancy Mills, husband and wife, for the recited consideration of $1 conveyed to their sons, Mat and Sawyer Mills, a tract of land in Knox county, Ky., containing something over 300 acres. The conveyance was in the usual form of a warranty deed, but it contained the following provisions:

"Should parties of second part hereinbefore mentioned fail to sell, devise or bequeath such property hereinbefore described in their lifetime, then said property shall fall to the legal heirs of the bodies of A. Y. Mills and Nancy Mills when these grantors [A. Y. Mills and Nancy Mills] shall have deceased.

"Should either of second parties Mat Mills or Sawyer Mills decease before selling or disposing of said property, then said property shall go to the survivor of the second parties."

In November, 1924, Mat Mills and Sawyer Mills and Charles Butler and others agreed upon an exchange of land whereby Mat and Sawyer Mills traded or exchanged the land conveyed to them by the above deed, and other land not included in that conveyance, for a tract of land which Butler and others conveyed to them. A. Y. Mills and Nancy Mills joined their sons Mat and Sawyer Mills in the deed to Butler and others conveying the land exchanged and covered by the deed from A. Y. and Nancy Mills to their sons, but other land involved in the exchange and not covered by that deed was, at the direction of Butler and others, conveyed by Mat and Sawyer Mills to William and Nancy Grey. In the deed from Charles Butler and others to Mat and Sawyer Mills conveying the tract of land given in exchange for the lands owned by the Mills, there were no conditions or restrictions; the deed on its face conveying a fee-simple title.

In August, 1923, A. Y. Mills and Nancy Mills instituted this equitable action against Mat and Sawyer Mills, alleging that many years ago they conveyed title to a tract of land to the defendants in trust yet retained possession of same; that thereafter the land was swapped to Charles Butler for other lands described in the petition, and title in trust to defendants was made for

the use and benefit of plaintiffs with the distinct agreement and understanding that title thereto should be made by defendants to plaintiffs on their order and demand; that although demand had been made upon them, they had failed and refused to transfer title to plaintiffs. They prayed that defendants be required to convey to them the land described in the petition and, upon their failure to do so, the master commissioner be directed to convey same on their behalf to plaintiffs.

In addition to a general denial of the allegations of the petition, defendants in a second paragraph alleged that at the time plaintiffs made the deed to defendants, A. Y. Mills was indebted to Mat Mills in the sum of $375; that at the time A. Y. Mills was engaged in the mercantile business and was indebted to various wholesale houses for substantial sums and contemplated procuring further credit for goods in substantial sums; that his creditors were pressing him for payment, and plaintiffs, for the purpose of placing the title to the tract of land conveyed beyond the reach of his creditors and proposed creditors and with the fraudulent intent to prefer Mat Mills and to cheat, hinder, and delay his creditors, executed and delivered the deed to defendants, which was accepted by them and of which they took charge, subject to certain privileges which they from time to time granted plaintiffs in the use of the property; that they swapped the tract of land conveyed by the deed from plaintiffs to Charles Butler and wife as a part of the consideration for the land conveyed by Butler and wife to them, but as a part of the consideration of the exchange they conveyed another tract of land to William Grey at the direction of Charles Butler and wife and that Grey paid the consideration therefor to the Butlers; that in addition to the sum of $375 which A. Y. Mills owed Mat Mills at the time of the execution of the first deed, defendants have paid to plaintiffs the further sum of $2,000 which they accepted and received for the land; and that the sum so paid was the fair and reasonable value of the land at the time it was conveyed to defendants.

After proof had been taken by the respective parties, Cordia Taylor, Winnie Edwards, and Dicie Johnson, daughters of A. Y. and Nancy Mills, filed a petition asking to be made parties, and alleged that they and the defendants Mat and Sawyer Mills were the only children and heirs at law of plaintiffs. They further al-

leged that about the year 1922, plaintiffs, for the love and affection which they had for the children and because of domestic friction between them, determined to make a conveyance of all of their real property to their five children; that the deed was executed and delivered to one of the defendants and is now in the possession of one of them, or after its execution and delivery and for the purpose of defrauding the petitioners out of their lawful interest was destroyed; that in lieu of the deed so executed and delivered, the defendants through fraud, deceit, and misrepresentation procured plaintiffs, or at least plaintiff Nancy Mills, at a time when she was old, infirm, could not see nor read nor write, and was uneducated to sign another deed to defendants by which there was conveyed to them plaintiffs' home place and other lands which were thereafter exchanged for the land in controversy; that the equity title and interest of the petitioners passed from the original tract into the land in controversy and that they are the owners of a three-fifths undivided interest therein, subject to the right of plaintiffs to use, occupy, and control same during their life; that if it should be adjudged by the court that the land in controversy belongs in fee simple to A. Y. and Nancy Mills, petitioners would have no complaint, but should it appear to the court that the original deed irrevocably passed title, then the petitioners should be adjudged a three-fifths undivided interest in all the property, and in that event defendants should be compelled to produce and enter of record such original deed. They prayed that they be adjudged the ownership of a three-fifths undivided interest in the lands in controversy in the event the court should conclude that plaintiffs are not entitled to recover such property, and in that event prayed that the deed upon which defendants rely be adjudged fraudulent, canceled, set aside, and held for naught.

Thereafter defendants filed an amended answer, alleging that at the time of the execution and delivery of the deed by Charles Butler, etc., to them, and immediately prior thereto, A. Y. Mills and Nancy Mills knew and had actual notice and knowledge of, and consented and acquiesced in, the execution of the deed to defendants conveying title to them; that by reason thereof and the acts set out in the original answer, plaintiffs are estopped from claiming title to the land or to any interest therein.

The issues were completed by an agreement treating the affirmative allegations of the pleadings as controverted of record. On final hearing it was adjudged: (1) That Sawyer and Mat Mills are the joint owners of a one-fourth undivided interest in and to the land described in the deed from Charles Butler and others to them by reason of payment of part of the purchase price by them for the land; (2) that Sawyer and Mat Mills own a life estate in the remaining three-fourths undivided interest in such land with survivorship to the one who survives the other; (3) that the remainder in and to the three-fourths shall pass at the death of the survivor to the living legal heirs of the body of A. Y. and Nancy Mills. It was further adjudged that plaintiffs recover their costs. From so much of the judgment as is adverse to them, plaintiffs are prosecuting an appeal, and upon motion of defendants they have been granted a cross-appeal from so much of the judgment as is adverse to them.

A. Y. Mills testified that for many years he owned the land which he and his wife conveyed to their sons; that he and his wife first conveyed it to the heirs of their body; that Mat seemed to become dissatisfied with this arrangement and wanted the land deeded to him and Sawyer, which he and his wife later did. He assigned as a reason for making the deed that he and his wife were having domestic trouble, and his evidence and that of others indicates that the wife had consulted an attorney and was threatening to institute suit for divorce and alimony; that she was insisting that the land be conveyed to their children, or at least to Mat and Sawyer, so her husband could not dispose of it, or in the event he remarried, others would not get the property. A. Y. Mills testified that his sons said they would permit him to handle and control the land as he had been and would deed it back to him; that neither of the sons paid him any consideration for the land; that at the time the deed was made, he might have owed some wholesale houses, but that the deed was not made for the purpose of defrauding creditors; and that all of them had been fully paid.

Concerning the tract of land which Mat and Sawyer conveyed to William Grey and which it is claimed was a part of the consideration for the land conveyed to them by Charles Butler and others, A. Y. Mills claims he owned it, but he did not join in the deed with his

sons, and his evidence concerning his ownership like that regarding many other matters is very vague, indefinite, and uncertain. When asked why she made the deed to her sons, Mrs. Mills testified that it was her understanding that it was being made to her five children, and when it was read over to her she protested because of the names all not being in it, and they told her it was to her lawful heirs and they would get it. When asked how Mat and Sawyer's names got in the deed, she replied:

> "Their names was put in it but not with my understanding that they were to have it altogether, that it was to be for the five heirs but their names were in it in some shape but not in a way I can explain it."

She stated that it was not their intention to give the land to Mat and Sawyer, but they said nothing about conveying it back; that she told them she would sign it if it was made to the five children; and that they said it was made to the lawful heirs of "our body" and that they would get it. Mrs. Mills admitted that she and her husband at one time made a deed for this tract of land to his parents, but could not give any details or definite information concerning that transaction. The three daughters testified, but they knew nothing personally about the deed from their parents to their brothers, their evidence relating in the main to statements made by the mother indicating that it was her purpose and intention that the deed should be made to all the children, and one of them testified that one of the brothers made the statement that the deed was made that way. Both Mat and Sawyer Mills testified that the deed dated July 19, 1923, hereinbefore referred to, was the only deed made to them by their father and mother and that no deed was made to all the children. Mat Mills testified that his father was indebted to him in the sum of $370 or $375 and had been discussing for some time making him a deed to a portion of the land. They testified concerning the domestic trouble between their father and mother and of her threatening to institute proceedings against him, and also that A. Y. Mills was heavily indebted and was being pressed by his creditors and had expressed fear that the creditors would attempt to subject the land. They testified that there was no agreement or understanding that they would convey the land back to their father and mother

or that there were any conditions except those expressed in the deed. Sawyer Mills testified that he furnished money to his father to pay some creditors, and his father later said he could not pay it but would let it apply on the land which he had deeded to him and Mat. There is evidence for appellees that Mr. and Mrs. Mills read the deed which they made to their sons, and that the mother suggested some of the quoted provisions. There is considerable evidence concerning financial transactions between A. Y. Mills and his sons, and especially with Mat Mills. There is a conflict in evidence as to who actually owned the land conveyed to William Grey, Mat and Sawyer Mills being positive in their statements that the title to this land was in them, but concerning all these matters there is a conflict.

Since there is nothing in the deed from A. Y. Mills and Nancy Mills to their sons to indicate or express an intention to create a trust and no other documentary evidence to evince or express such an intention appellants must necessarily rely upon parol evidence to substantiate their claims. Even if it be conceded that there was no consideration for the conveyance except the nominal consideration of $1 expressed therein, no inference arises from that fact favorable to appellees.

In Restatement of Law of Trusts, sec. 405, p. 1251, it is said:

"Where a transfer of property is made without consideration, the inference is that the transferor intends to make a gift to the transferee not that he intends that the transferee should hold the property for the benefit of the transferor. This is true even though it appears in the instrument of conveyance that no consideration is paid for the conveyance."

It is indicated in that work that this is a departure from the common-law rule.

Appellants cannot establish their claim that this land was or is held in trust by appellees for the use and benefit of A. Y. and Nancy Mills by a mere preponderance of evidence, but the evidence to establish such trust must be strong, unequivocal, and convincing, and of such a nature as will leave no doubt as to the truth of the necessary facts. Webb v. Webb, 200 Ky. 488, 255 S. W. 137; Holtzclaw v. Wells, 166 Ky. 353, 179 S.

W. 193; Williams v. Scott, 216 Ky. 688, 288 S. W. 672; Masters v. Masters, 222 Ky. 427, 300 S. W. 894; Clark v. Smith, 252 Ky. 50, 66 S. W. (2d) 93. Restatement of Law of Trusts, sec. 39.

Following this well-established rule respecting the character of evidence required to establish a trust, it is at once apparent that the evidence for appellants fails to measure up to the requirements; but even if only a preponderance of evidence were required, it could at most be said that the evidence is about equi-ponderant, and in the confused and conflicting state of the record the mind would be left in doubt as to the correctness of the chancellor's finding, and therefore it should not be disturbed.

The claim of the daughters that it was the intention of their parents to convey the land jointly to the five children, the relief asked by them on that ground would involve a reformation of the deed. The same rules apply to the weight and sufficiency of the evidence to warrant such reformation as applies to establishing a trust. Mere preponderance of evidence is not sufficient to warrant a reformation of a deed on the ground of fraud or mistake, but it must be clear and convincing and establish such fraud or mistake beyond reasonable controversy. Chinn v. Baxter, 203 Ky. 630, 262 S. W. 974; Neel v. Gibson, 212 Ky. 480, 279 S. W. 666; Atha v. Webster, 181 Ky. 581, 205 S. W. 598; Reiss v. Wintersmith, 241 Ky. 470, 44 S. W. (2d) 609; Isaac's Guardian v. Isaacs, 247 Ky. 661, 57 S. W. (2d) 661. The evidence offered to establish the fraud or mistake in the deed is clearly not of such character or weight as would authorize a reformation of the instrument.

The cross-appeal involves the propriety of the court's construction of the quoted provision of the deed. While the quoted provisions are somewhat awkwardly worded, it is manifest that it was intended thereby to give to the grantees an estate for life in the property conveyed with remainder to the heirs at law of the grantors at the death of the survivor of the grantees, and this was the effect given to the instrument by the judgment of the chancellor.

Wherefore the judgment is affirmed on both the original and cross appeals.