## Hunt v. Stacey et al.

(Decided Nov. 4, 1936.)

L. J. MAY for appellees:

Opinion of the Court by Chief Justice Clay— Reversing.

On September 8, 1932, W. B. Stacey and his wife, Exie Stacey, in consideration of $1,100 cash in hand paid, conveyed to Kitty Hunt a house and lot on Mud Lick fork of Blackberry fork of Pond creek, in Pike county. Annexed to and a part of the dwelling there was an electric light plant which had been installed for the purpose of furnishing current to light the property. On November 10, 1933, the grantors entered upon the premises and removed the light plant. Alleging that the light plant was under the same roof and was annexed to and made a part of the dwelling, that it was reasonably worth the sum of $500, and had been removed from the premises without right, Kitty Hunt, the grantee, brought this action to recover damages in that sum. The grantors filed an answer and counterclaim pleading in substance that it was agreed that the light plant and fixtures should be excepted and not sold, and asking a reformation of the deed on the ground that that provision of the contract was omitted by mistake. The court adjudged a reformation and dismissed the petition. Kitty Hunt appeals.

The evidence bearing on the contract and its omission by mistake is in brief as follows: J. T. Ligon deposed that he lived in Mr. Stacey's property for 2 months. He got the light plant from Mr. Stacey's garage and put it in the place where he was living. Later on he heard a conversation between Mr. Stacey and Mr. Hunt. Mr. Stacey said something about moving the plant and taking the wiring out. Mr. Hunt said you needn't bother about taking the wiring out, that he would want lights himself. Mr. Hunt made no complaint about moving the plant at that time. He admitted on cross-examination that he could not swear that Mr. Stacey excepted the plant because he did not know. The light plant was bolted to the floor with three crossbolts. It was put in for the purpose of furnishing lights for the one home. Mrs. Ligon never heard Mr. and Mrs. Hunt say anything about not getting the light plant. W. B. Stacey's account of the trade is as follows:

"We were over in the road above the house right from the upper corner of the line talking and after we agreed on the price and where the line should be made and the house and land, I told them I would set the corner stones and make the deed tomorrow

I believe, and I said I will set the stones and make a deed tomorrow for $1,100.00, or in other words a yoke of cattle and $1,000.00, and after we made the trade and when we was talking about it I said I will set the corner stones and make the deed and I have a light plant I want to except, and I told George there was a barn over there and a shed on it and I told him I would give it to him if he would move it."

After that Stacey had a conversation with George Hunt about moving the light plant, and George made no objection. After the Hunts had moved in and they were all sitting around the fire talking, he said, "Is my light plant in your way?" They both said it was not and he said he would send and get it, and later did send. After the suit was brought, he said, "Kitty, you know I excepted the light plant, and if I had not I wouldn't have moved it," and she said it was not excepted in the deed. I said, "No, I didn't think it had to be." She said, "Uncle Will, you needn't blame me with it, it was George." At the time he made the deed he. did not think it had to be in the deed. That was the reason it was not put in the deed. If he had known it should be in the deed, he would have had it put there. On cross-examination Stacey testified that the deed was prepared by Amos Runyon at his suggestion. He paid $704 for the light plant, but it could have been bought for $300. He sold the light plant and got $150 for it. A. L. Stacey, uncle of Mrs. Hunt, testified that he went in company with Burl Stacey to Mrs. Hunt's residence to get the light plant. Mrs. Hunt and the children were there. He told Mrs. Hunt, Burl had come after the plant and he had come to help load it. She said, "Well." They needed a wrench with which to take the bolts off. He asked Kitty if George had a wrench. She said she did not know, she would look. She did, and they found one. He did not know who found it. They used the wrench in taking the machinery up and loading it. He did not know who got the wrench. Burl Stacey testified that Kitty and the children were there and he went to get the plant. He asked Kitty if she had a wrench. She showed him a toolbox and told him to get the wrench out of that. The plant was too heavy for them to handle, and Kitty told him to go up to Mr. Philpot's and get him to help load the plant. At that time Kitty did not object to their taking it, nor claim that the plant was hers. Witness

denied hearing Mrs. Hunt say that she would rather they would not take the plant, but to wait until her husband came. Dan Philpot went to help load the truck. He did not hear Mrs. Hunt make any objections to moving the plant.

On the other hand, Mrs. Hunt denied that Stacey told her and her husband that the light plant was excepted. She also denied all other conversations testified to by W. B. Stacey or others, and claimed that when they came after the plant she told them to go and see George. She never sent one of her children after Mr. Philpot. Her husband made the trade and acted as her agent. George Hunt testified that he did the trading and his wife was standing by. Will wanted $1,200 for it and he would not give it. Will walked around the garden, showed them the place and called attention to the lights, "just like a city." He offered Will $1,000. Will replied, "I will take $1000 and your best car." He would not give it, but finally gave him a yoke of cattle and $1,000. Will never mentioned the light plant being excepted at all. In his opinion the place was worth $1,000 with the light plant and only $600 without it. The witness also denied having the several conversations after the trade testified to by Mr. Stacey. It was 13 months · after the place had been bought before they learned that the light plant had been taken away. During that time Stacey never claimed the light plant. Viola Hunt, age 12, was present when Mr. Stacey's son and one of his brothers came after the light plant. Her mother never told them to go after Mr. Philpot. Burl Stacey told them. When they came, Kitty told them to let it alone, not take it. She did not know that her brother had gone after Mr. Philpot. Her mother was in the front room and they were in the back.

To warrant the reformation of a deed on the ground of mistake mere preponderance of evidence is not sufficient, but the evidence must be clear and convincing and such as to establish the mistake beyond reasonable controversy. Mills v. Mills, 261 Ky. 190, 87 S. W. (2d) 389; Isaacs' Guardian v. Isaacs, 247 Ky. 661, 57 S. W. (2d) 661. In the case before us it was necessary to show by that character of evidence that prior to the execution of the deed the parties agreed that the light plant should be excepted from the conveyance, and that it was omitted therefrom by the mutual mistake of the parties. On

the one hand, we have the evidence of W. B. Stacey that he told the Hunts that the light plant was excepted, accompanied by further evidence tending to show that they acquiesced in, or made no objection to, the removal of the plant, and did not bring suit until several months after its removal. 'On the other hand, we have the positive denial on the part of the Hunts that anything was said about excepting the plant from the sale, as well as a denial of any conversations or conduct indicating that they acquiesced in, or did not object to, the removal of the plant. When this evidence is considered in the light of the fact that the light plant constituted one of the principal elements of value, and of the statement of W. B. Stacey that he did not have the plant excepted from the conveyance because he did not think it was necessary, it may be doubted if the evidence even preponderates in favor of the grantors. Certainly it is not such as to show beyond reasonable controversy that the parties agreed that the light plant should be excepted from the conveyance, and that it was omitted therefrom by mutual mistake. It follows that the deed should not have been reformed, and the petition dismissed.

Judgment reversed and cause remanded, with directions to ascertain the amount of damages and enter judgment in favor of appellants.