CASE 27—PETITION EQUITY—MARCH 27.

# Maddox's Ex'r, &c., v. Williams, &c.

APPEAL FROM CAMPBELL CHANCERY COURT.

1. BILL OF REVIEW.—A judgment that has been affirmed by this court, or which has been rendered in pursuance of its mandate, may be vacated by a petition in the lower court, but it must be done upon some of the grounds enumerated in section 518 of the Civil Code, and for such errors as could not be noticed by this court upon the appeal. The insolvency of the plaintiffs is not a ground for annulling or modifying the judgment.

2. VOID JUDGMENT.—A judgment against a defendant who, the court holds, was proceeded against both as executor and as heir, directing that the money arising from the interest of the defendant in the decedent's estate be held to satisfy the judgment, was not void, and it was too late after the judgment had been appealed from and affirmed to have it set aside or modified for errors which could have been corrected upon appeal.

A. E. RICHARDS & THOS. R. PHISTER FOR APPELLANTS.

1. Whenever the ends of substantial justice are subserved thereby, the court should allow an amendment to a pleading at any time, and the failure to allow the filing of an amendment under such circumstances is a reversible error.   (Civil Code, sections 134-5; Todd v. Wheeler, 1 Dana, 401.)

2. The matters set up in the rejected pleading were not *res adjudicata*, because they had not been previously put in issue, and could not have been because arising subsequent to the former litigation.

O'HARA & BRYAN FOR APPELLEES.

Allowing amendments to pleadings is a matter within the sound discretion of the court, and when the proposed amendment sets up matter already litigated, or that should have been litigated in a previous action, the amendment is properly rejected.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Robert Maddox died intestate and unmarried in 1868, leaving as the heirs of his estate, which consisted of both realty and personalty, his three sisters, the appellant, Eliza Johnson, the appellees, Elizabeth Williams and Artemesia Durst, and his brother, Alexander Maddox.   The latter qualified as his administrator, and as such representative obtained control of the personal estate, and also, by consent of the other three heirs took charge of the real estate.   He not only rented it out and collected the rents, but sold a portion of it and collected the purchase money.   He never made any settlement of his accounts, either as administrator or agent; and died testate in 1874, his sister, the appellant, Eliza Johnson, being, with the exception of two small legacies, the devisee of his entire estate. She, as his executor, took control of it.   In 1874, the appellees brought this action against her, asking a settlement of the accounts of Alexander Maddox, as administrator of Robert Maddox; that she be made to

account for whatever may have come to her hands belonging to the estate of the latter, and praying also for a sale of his Campbell county lands, and a division of the proceeds among the heirs.

The suit appears from the petition to have been brought against her as an individual. She is not styled in it as the executrix of Alexander Maddox. It, however, avers that she had qualified as such under a pretended will; and the security of Alexander Maddox, as the administrator of Robert, was made a party, but no decree rendered against him. Various defenses were presented, among which was the claim that the appellees had received their full portion of the estate of Robert Maddox. The cause was referred to a commissioner to settle the various claims and accounts arising out of both the administratorship and agency of Alexander Maddox. It resulted in a decree in January, 1879, for a sale of the land and a judgment in favor of the appellees for one-half the proceeds, and for about two thousand seven hundred dollars with interest against the appellant individually, with the direction that her half of the money arising from the sale be held to satisfy the judgment against her. She appealed to this court, and the judgment was affirmed on February 9, 1884. The mandate of this court was filed in the lower court on May 12, 1884; and thereafter, but upon the same day, the appellant, as the executrix of Alexander Maddox, offered to file an amended answer and cross-petition. Two days thereafter she also moved to file her individual answer and cross-petition. Both were rejected; and of this she now complains.

The last-named pleading avers that she had not been proceeded against as an heir of Robert Maddox, but only as the executrix of Alexander Maddox; that as such heir she had inherited one-fourth of the land, and that the judgment of 1879 should be enjoined or so modified that her interest derived from Robert might be allotted to her, and not sold subject to it. It had, however, been rendered five years before. She was individually a party defendant to the suit. It proceeded upon the ground that Alexander Maddox had, as administrator, obtained the most of his brother Robert's estate, and that then the appellant had acquired the estate of Alexander, including that acquired by him as administrator. The assignment of errors upon the former appeal was in the name of the appellant, both individually and as executrix. It substantially presented the same question as does this pleading, and it was then relied upon in argument by her counsel. Beyond doubt the judgment was not void, and the question is *res adjudicata.*

Turning now to the consideration of the amended answer and cross-petition offered by her as executrix, we find that it avers the insolvency of the appellees; sets up various claims against them, and asks that they be audited and allowed in her favor prior to any distribution of the estate of Robert Maddox.

Among them is one for compensation to her for caring for and renting out his real estate since the death of Alexander Maddox; another for taxes thereon paid by her, a portion of which accrued prior to Alexander's death, and the balance during the time the appellant was in charge of the property; also for her attorney's

fees in this suit, and in another suit by the appellees against her, in which they were unsuccessful, and for her costs in it; also for money advanced by her in September, 1874, to the appellee, Artermesia Durst; for rent of a house occupied by her since the death of Alexander Maddox, belonging to the appellant; and for an account of Alexander Maddox against Robert Maddox.

The pleading having been rejected by the court, its averments upon the question now presented must be taken as true. Under the old practice these claims, so far as they arose subsequent to the judgment of 1879, could not furnish ground for a bill of review. Those then in existence might, upon a proper state of pleading and facts.

Upon the affirmance of a judgment by this court or a direction from it to enter one of a particular character, the lower court could not disobey the mandate. It was imperative. The proper practice was and is, to file the mandate and enter a judgment accordingly; but even after this was done, a bill of review under the old practice could be maintained upon a proper state of case. Newly discovered facts, or the recent discovery of written testimony of a permanent and unerring character, would authorize it. No error could be relied upon, however, which might have been presented and decided by this court upon the appeal.

In other words, if the bill was of such a character that it would have authorized a review and vacation of a judgment after the expiration of the term at which it was rendered, then it was maintainable even to the extent of avoiding the mandate of this court. (Denny v. Wickliffe, 1 Met., 216.)

This practice and these principles of courts of equity have not been changed by the Code of Practice, although a bill of review *eo nomine* is unknown to it.

Under the present practice, a judgment that has been affirmed by this court, or which has been rendered in pursuance of its mandate, may be vacated by a petition in the lower court, but it must be done upon some of the grounds enumerated in section 518 of the Civil Code, and for such errors as could not be noticed by this court upon the appeal.

In the case now before us, the appellant is seeking to modify or annul, at least *pro tanto*, the judgment of 1879. She can only do so upon some ground which then existed, and which is embraced by the Code provision. Her pleading does not come within it. It sets forth none of the grounds upon which by the Code a judgment may be vacated or modified after the expiration of the term at which it was rendered. So far as the claims asserted in it may have existed when or before the judgment was rendered in 1879, no reason is given why they were not then asserted.

The judgment and its subsequent affirmance by this court ended the case, subject only to be opened and the litigation continued in this particular case upon some of the grounds provided by the Code. Unless this were the rule, a suit might be protracted almost without end.

The appellant appears to rely upon the insolvency of the appellees as a ground for annulling or modifying the judgment. Indeed, this is the only reason presented.

Whether by an independent action she could have

made her claims available as against the judgment against her is not now a question before us, as such mode of proceeding was not adopted.

In support of these views, see McLean v. Nixon, 18 B. M., 768; Speak, &c., v. Mattingly, &c., 4 Bush, 310, and Scott, &c., v. Scott's Ex'r, &c., 9 Bush, 174.

Judgment affirmed.